Ranney, J.
Both parties claim under the will of Conrad Worman, deceased. The lessor of the plaintiff was his wife, and the defendant is her brother and the brother-in-law of her deceased, husband.
The rights of each of the parties arising under the same instrument, they must be determined by a fair construction of it; and a fair construction only is given when the intention of the testator is ascertained from what he has said—read without being controlled by grammatical accuracy, and in view of his situation and circumstances, with reference to the subjects of his dispositions and the objects of his bounty. With these collateral aids, often necessary to enable the court to see things as he saw them, and to apply his-language as he understood and intended it, the will must speak for itself, and the intention of the testator must be gathered from what appears on its face. To allow the natural import of the words thus-ascertained to be varied or contradicted, or omissions supplied, or apparent ambiguities to be removed by parol evidence, would be to repeal the law requiring it to be in writing, and to introduce all the uncertainty, fraud, and perjury the statute was designed to prevent.
The claim of the plaintiff to recover the premises in dispute was founded upon an alleged failure of the defendant *to deliver to the plaintiff’s lessor one-third of the grass and hay grown on the- *334 farm in the years 1850 and 1851, which it was claimed was made a ■condition to his estate under the will; and by which he had forfeited it, and a devise over to her had taken effect. The court held the will contained no such condition; ruled out the plaintiff’s evidence offered to show a refusal to deliver the hay on demand, and charged the jury that the question was not for their consideration, .as a refusal to comply with that requirement of the will, would not work a forfeiture of his estate, or entitle her to the possession.
The will is as follows:
“ I give and devise unto my dearly beloved wife, Elizabeth Worman, my plantation, whereon I now live, during her natural life, it being the southwest quarter of section number thirty-throe, of the lands offered for sale at Steubenville, Ohio, containing one hundred and sixty acres of land, be the same more or less, together with all and singular the goods and chattels of every description, including all moneys due me (at my decease), either by bond, note, due-bill, book-account or otherwise; also the dwelling-house, pump, the garden, bee-houses, gully-spring, spring-house; the privilege of keeping one horse, two cows, one hog, and as many chickens as she may want to keep; the use of the chicken-house and hog-house; as much of the fruit off of the place as she may want to use; all of which goods and chattels, moneys, and all other privileges aforesaid, to be and remain hers, her heirs and assigns forever—excepting my farm aforesaid, together with the improvements; provided, however, that my true and trusty friend, fm, Teagarden, Jr., my brother-in-law, shall farm my said plantation, and give me the one-third of ■all the products of my said farm, and after my decease shall give one-third of all the products of said farm to. my said wife, in lieu of her right of dower. I give and devise to my said friend, William Teagarden, after the death of my said wife, my said plantation, with ■all the improvements thereto belonging, or in anywise appertaining, and *unto his heirs and assigns forever; provided, that my said friend, William Teagarden aforesaid, shall pay my funeral expenses, and all other claims and debts that I may owe at my decease ; and after my decease to ñnd my wife aforesaid in a sufficiency of good dry fire-wood, ready for the fire, at her said dwelling-house; and stable, feed, pasture, and turn in and out one horse, two cows, and one hog; and. also furnish a sufficiency of good manure in the ..garden, and keep up in good repair all said property in good order during my own and my wife’s lifetime: and on failure of said William Teagarden so to, do, then and in that case I give and devise unto my said wife, Elizabeth Worman, her heirs and assigns forever, the farm, together with all the improvements and appurtenances thereto belonging.”
*335 This will certainly needs the benefit of all the liberal rules applicable to such instruments. It is incorrect and involved in its language, and, when that alone is regarded, apparently contradictory in its provisions; and was evidently made under the erroneous idea, by no means uncommon amongst persons of limited intelligence, that it was to take effect immediately, and before the testator’s death. But, notwithstanding all this, his leading purposes and objects seem to us very apparent, and, when they are followed, the meaning of his language sufficiently obvious.
He plainly intended to give to his wife absolutely, and unincumbered with his debts, all his personal property, and a life estate in all his real property. This is expressed in unequivocal language in the commencement of his dispositions, and when the sense, rather than the letter, is regarded, is not afterward contradicted. There is, therefore, no room for the application of the rule, that as between two contradictory clauses, the last shall govern-—a rule of construction the very last to be applied, and never, as long as a possibility of reconciling them remains. The words, “ excepting my farm aforesaid, together with the improvements,” are not to be read as an exception to the grant of a life estate previously given, but to the words which immediately precede *them, “ to be and remain hers, her heirs and assigns forever.”
His object seems to have been to provide for farming his plantation during his own life and that of his wife; and the right to do this he secures to his '“true and trusty friend” and brother-in-law, the defendant, upon the customary terms of rendering one-third of the annual products, carefully distinguishing between such parts of the estate as he was to possess for the purpose and those that wore to remain in the exclusive possession and enjoyment of his wife. The words “provided, however,” with which the grant of this right is introduced, could mean nothing more than the indication of a purpose to so far limit the power of his wife to control absolutely the possession and occupancy of the whole, which would have resulted from an unrestricted devise of the life estate. 1
During the life of the testator the defendant was his tenant, and the relation of landlord and tenant thus existing between them, with all its rights and incidents, was exactly the relation that the will provides for between the defendant and the lessor of the plaintiff after the death of the testator; and it sprung' up as soon as she elected to take under the will, and still continues.
*336 By these dispositions the farm was disposed of during the life of' the wife, and provision made for working it, in a manner, as was undoubtedly supposed, most agreeable and advantageous to her. So far, no special benefits are secured to the defendant. He is to crop the farm upon the usual terms and in the usual manner, and becomes liable for the stipulated return as any other tenant would. The rent of the land is paid for in the proportion of the crop ho is. bound to render, and the value of his labor in that he is authorized to retain. A right to terminate his occupancy, upon failure to pay the rent, might have been inserted, if the testator had seen fit, but he has not, and the consequence is the defendant only remains liable to the usual remedies for its collection.
The testator next proceeds to dispose of the remainder in fee, *aftor the death of his wife, to the defendant; and this he-does upon certain and expressed conditions, with a devise over to-, his wife if they are not performed. These conditions imposed upon the defendant the following obligations: 1. To pay the funeral expenses, and all just debts of the testator; 2. To furnish his wife with a sufficiency of good dry fire-wood, delivered at the dwelling-house; 3. To stable and feed, and turn in and out, one horse, two-cows, and one hog; 4. Furnish a sufficiency of good manure in the-garden; and 5. Keep all the property in good repair .during the life of the testator and that of his wife. They are all such as he-was not bound, as tenant, to perform, and for which he was to receive no other compensation than the devise of the land; and whatever they might amount to, they must undoubtedly be regarded as the consideration upon which it was made.
These, on our reading of the will, are the conditions upon the-performance of which, the estate in remainder is made to depend; and the only conditions expressed in it upon which that, or the lesser interests of a cropper, is made liable to be defeated. We are therefore of opinion, with the court below, that the evidence offered was entirely immaterial and irrelevant; and admitting the defendant to be bound to give the lessor of the plaintiff one-third of the-grass and hay annually (upon which we express no opinion), that a refusal to do so would not work a forfeiture of his title, or entitle her to the possession of the farm.
Indeed, if this construction was much more doubtful than it is— nay, if it was not absolutely clear, that the opposite was the true-construction—we should not be at liberty, on well-settled principles,. *337 to hold the payment of this rent a condition upon which the estate might bo defeated. For, while no particular form of words is necessary to raise a condition, and the intention, in all cases, will govern, yet, as stated by Chancellor Kent (4 Kent’s Com. 132), “If it be doubtful whether a clause in a deed be a covenant or a condition, the courts will incline against the latter construction, for a covenant *is far preferable to the tenant. Whether the words amount to a condition, or a limitation, or a covenant, may be matter of construction, depending on the contract. The intention of the party to the instrument, when clearly ascertained, is of controlling efficacy, though conditions and limitations are not readily to be raised by more argument.”
This doctrine has most appropriate application where the obligations, imposed or assumed, require, as in this case, the performance of many separate acts, and continuous duties, extending over a considerable period of time; and where the non-performance of any one of them, however inconsiderable in importance, when compared with the whole, might defeat an estate, after most of them had been performed, and after the actual consideration of the grant had, for the most part, been actually rendered.
The judgment must be affirmed.